

**MACK TRUCKS, INC.**
**2100 MACK BOULEVARD**
P.O. **BOX M**
**ALLENTOWN, PA 18105-5000**

**May 17, 2004**

**Mr. John McCoy**
**Mr. Barry Wishnow**
**Johnny M LLC**                    VIA UPS NEXT **DAY** AIR
**20 West 55th Street**
New York, NY **10019**

**RE: Mack/Johnny M LLC Trademark License Agreement –dated April 2, 2004**

**Gentlemen:**

Attached **for** your **file is a** fully **executed** original Trademark License Agreement **between** Mack Trucks, Inc. and Johnny M **LLC.   On** behalf **of the** entire Mack organization, I **want to welcome you to** Mack's **family of licensees.   I** look forward to a great partnership along with **tremendous success in building the** Mack name **into a powerhouse apparel** brand.

**Sincerely,**

*IL*

**Randy M. DeLillo Manager, Corporate Stores & Licensing**

cc: Copy of Agreement to LMCA - Allan Feldman

4.4   Licensor Purchases of Licensed Items. Upon the immediate release of the marketing and distribution of the Licensed Items, Licensee agrees to sell the Licensed Items to Licensor for their own use or for resale to their employees and distributor's employees and/or to its licensing agent, Leveraged Marketing Corporation of America, for their own use, at prices and terms which are lower than or equal to those same prices and terms charged and afforded by Licensee to its best wholesale customer. Royalties shall be payable on all such sales.

ARTICLE 5
GUARANTEED MINIMUM ROYALTIES AND ROYALTY PAYMENTS

5.1   Guaranteed Minimum Royalties. Notwithstanding anything to the contrary set forth herein, Licensee shall pay to Licensor during the Initial Term a Guaranteed Minimum Royalty of  Components by John McCoy, Inc. ('Components") will provide a financial guarantee of payment of Licensee's obligation to pay the Guaranteed Minimum Royalties to Mack for sale of the Licensed Items if this Agreement terminates prematurely during the Initial Term. In such case, payment of the financial guarantee shall be made immediately upon termination. During the Initial Term the amount of the financial guarantee by Components shall not exceed Until the Licensee has paid in Guaranteed Minimum Royalties to Mack during the Initial Term, the
maximim guarantee by Components will not be reduced. Thereafter it shall reduce dollar for dollar as Guaranteed Minimum Royalties are subsequently paid to Mack during the Initial Term. The Guaranteed Minimum Royalties shall be payable as follows:

| Payment | Due Date |
|---------|----------|
|         | Upon Execution of Agreement |
|         | December 31, 2004 |
|         | March 31, 2005 |
|         | June 30, 2005 |
|         | September 30, 2005 |
|         | December 31, 2005 |
|         | March 31, 2006 |
|         | June 30, 2006 |
|         | September 30, 2006 |
|         | December 31, 2006 |
|         | March 31, 2007 |

For the three one-year Extension Terms, the Guaranteed Minimum Royalties shall be as indicated below and paid to Licensor in four equal quarterly installments with each installments due on or before June 30, September 30 and December 31, and March 31 of the then current Extension Term:

First Extension
Second Extension
Third Extension

For each year within the Fourth Extension Term (five years), the annual amount of Guaranteed Minimum Royalties shall be determined and agreed upon by both the Licensee and the Licensor. Such discussions shall begin no sooner than 18 months prior to the end of the Third Extension Term. The payment and due dates for the Fourth Extension Term Guaranteed Minimum Royalty shall also be divided in four equal quarterly installments with each installment paid to Licensor on or before June 30, September 30, December 31, and March 31, of each year within the Fourth Extension Term.

5.2    Application of Earned Royalties in the Initial Term and Extension Terms. The Earned Royalties shall be accounted for quarterly during the Initial Term and any Extension Term and applied against the Guaranteed Minimum Royalties pursuant to the schedule specified in Section 5.1 above and any cumulative Earned Royalties for the applicable period in excess of the cumulative Guaranteed Minimum Royalties for the same period shall be paid by Licensee to Licensor no later than fifteen (15) days following the end of each quarter, starting with the quarter ending March 31, 2005.

5.3    Royalty Periods. For the purpose of calculating and remitting any Guaranteed Minimum Royalty, Royalty Payments, and/or Earned Royalties to Licensor, each such Royalty Period as defined in Section 4.1 herein shall be deemed independent of all other periods, without calculations of rollovers and rollbacks.

ARTICLE 6
MINIMUM NET SALES OF LICENSED ITEMS

6.1    Minimum Net Sales. Notwithstanding anything to the contrary set forth herein, Licensee shall maintain Minimum Net Sales during each Term as follows:

| | |
|---|---|
| Initial Term | $31 Million |
| First Extension Term | $42.3 Million |
| Second Extension Term | $55.2 Million |
| Third Extension Term | $59.7 Million |
| Fourth Extension Term | To be determined |

6.2    Failure To Meet Required Minimum Net Sales and Guaranteed Minimum Royalties. Should Licensee fail to maintain at least 80% of the required Minimum Net Sales figures as provided in Section 6.1 during any two consecutive Terms or during any two consecutive years within the Fourth Extension Term, then Licensor may, at its option, elect to terminate this Agreement by written notice delivered to Licensee within one-hundred-twenty (120) days after the end of any Term in which Licensee failed to maintain such required Minimum Net Sales. Furthermore, Licensor may, at its option,

6

ARTICLE 18
ADDITIONAL RESTRICTIONS UPON USE OF LICENSED MARKS

18.1    Identification of Licensed Items. It is the intention of the parties hereto and the purpose of this Article 18 that all of the Licensed Items be identified to the general public by the Licensed Marks. Licensee agrees to use a registration indicator in the form of a circled-R or symbol in conjunction with registered Licensed Marks or TM in conjunction with unregistered Licensed Marks when so instructed by the Licensor.   Licensee further agrees to assist Licensor in obtaining registrations for the Licensed Marks in the event the Licensed Marks are not yet registered for the Licensed Items. Licensee agrees to use notice language in the manufacture, sale, advertising or other promotion of the Licensed Items as follows: "MACK, Mack and the Bulldog Design Oval Logo and Built Like A Mack Truck are Registered Trademarks of Mack Trucks, Inc. All rights reserved" or other such language as Licensor designates in writing.


ARTICLE 19
DEFAULTS BY LICENSEE

19.1  Defaults. Except as otherwise expressly provided in this Agreement, in the event Licensee shall default in the performance of any of the terms, conditions or obligations to be performed by Licensee hereunder, and if such default involves the payment of money and is not cured within ten (10) days of such default, or if such default involves performance other than the payment of money and the same is not cured thirty (30) days after Licensor gives written notice to Licensee of such default, then, and in any such event, Licensor may immediately and without prior notice terminate this Agreement and all of the rights and obligations hereunder (except as otherwise expressly provided by this Agreement). In the event that a Receiver is appointed to, or one or more creditors take possession of all, or substantially all, of the assets of the Licensee, or if Licensee shall make a general assignment for the benefit of creditors, or if any action is taken or suffered by Licensee under any state insolvency act or a proceeding is commenced under Title 11 of the United States Code against Licensee, then this Agreement and all of the rights and obligations hereunder (except as otherwise expressly provided by this Agreement) shall immediately, and without notice or need of any further action by any party hereto, terminate.

19.2  Time for Performance. The time for performance of any act required of either party shall be extended by a period equal to the period during which such party was reasonably prevented from performance by fire, flood, storm, or other like casualty beyond such party's control.

19.3  Acceleration of Earned and Minimum Royalties. In the event this Agreement is terminated by Licensor due to a breach by Licensee, then all Earned Royalties and Guaranteed Minimum Royalties for the remainder of the Royalty Period in which the termination occurs shall be paid to Licensor per the schedule as outlined in Paragraph 5.1, without prejudice to any other rights or remedies which Licensor may have in law or in equity.

14

in the name of, Licensor or to bind Licensor in any manner or thing whatsoever; nor is Licensor granted any right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of Licensee, or to bind Licensee in any manner or thing whatsoever. No joint venture or partnership between the parties hereto is intended or shall be inferred.

## ARTICLE 28
## AMENDMENTS AND WAIVERS

28.1  This Agreement may be amended or modified as mutually agreed to by Licensor and Licensee, and Licensor may waive any of its rights hereunder or performance by Licensee of any of its obligations hereunder, but only by instrument in writing. In the event Licensor shall at anytime waive in writing any of its rights under this Agreement or the performance by Licensee of any of its obligations hereunder, such waiver shall not be construed as a continuing waiver of the same rights or obligations, or a waiver of any other rights or obligations.

## ARTICLE 29
## ENTIRE AGREEMENT

29.1  This Agreement constitutes the entire Agreement between the parties as to the Licensed Items, and supersedes all prior agreements and understandings relating to this subject matter hereof.

## ARTICLE 30
## SEPARABILITY OF PROVISIONS

30.1  If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, such provisions shall be fully severable. The Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provisions had never comprised a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Agreement, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid or enforceable.

## ARTICLE 31
## COUNTERPARTS AND HEADINGS

31.1  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. The headings herein are set out for convenience of reference only and shall not be deemed a part of this Agreement.

19

33.2  Indemnification for Breach. Licensee hereby further agrees that it shall indemnify and forever hold harmless the Indemnified Parties against and from any and all claims, suits, losses, damages, costs, obligations, liabilities, judgments, damages and expenses, including without limitation, reasonable attorneys' fees arising out of breach or alleged breach by Licensee of any provision of this Agreement, or any misrepresentation made by Licensee herein or any act not expressly authorized herein. Licensee further agrees that it shall indemnify and forever hold harmless the Indemnified Parties from any and all product liability claims arising from the use or misuse of the Licensed Items.

33.3  Survival of Terms. The provisions of this Article 33 shall survive the termination (or expiration) of this Agreement.

ARTICLE 34
ADDRESSES FOR NOTICE

34.1  All notices, statements, consents, instructions or other documents required or authorized to be given hereunder shall be in writing, and shall be delivered personally to an officer, partner or authorized representative of the other party or by certified mail, return receipt requested, addressed to the parties concerned as follows:

to Licensee at:

Johnny M LLC, Attn: John Mc Coy II, President, 20 West $_{55}$th Street, New York,

NY 10019

With a copy to: Todtman, Nachamie, Spizz & Johns, P.C., Attention: Barton

Nachamie, Esq., 425 Park Avenue, New York, NY 10022

and to Licensor at

Mack Trucks, Inc., Attn: Randy DeLillo, Manager-Corporate Stores & Licensing, 2100 Mack Blvd., Allentown, PA 18103

and to
Leveraged Marketing Corporation of America, Attn: Mr. Allan R. Feldman, 156 West 56th Street, New York, New York 10019

and shalt be deemed to have been given upon receipt.

21